UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TODD GOSHA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00336-WTL-DLP |
| | ) | |
| R. ROBINSON RN, | ) | |
| MARY A. CHAVEZ Dr. (MD), | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Unopposed Motion for Summary Judgment and Directing Entry of Final Judgment**

Plaintiff Todd Gosha brought this civil rights action pursuant to 42 U.S.C. § 1983 against defendants Dr. Mary Chavez and Nurse Regina Robinson based on the allegation that he received inadequate treatment for his hernia and the defendants were deliberately indifferent to his serious medical needs. Dkt. No. 2. Presently pending before the Court is defendants' motion for summary judgment. Mr. Gosha has not opposed the motion for summary judgment. For the reasons explained below, the motion for summary judgment, Dkt. No. 26, is **granted**.

### I. Summary Judgment Legal Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's

favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Mr. Gosha failed to respond to the defendants' motion for summary judgment, and the deadline for doing so has long passed. The consequence is that Mr. Gosha has conceded the defendants' version of the events. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). Because Mr. Gosha failed to respond to the defendants' motion, and thus failed to comply with the Court's Local Rules regarding summary judgment, the Court will not consider allegations in Mr. Gosha's complaint as evidence opposing the motion for summary judgment. Although *pro se* filings are construed liberally, *pro se* litigants such as Mr. Gosha are not exempt from procedural rules. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (noting that "pro se litigants are not excused from compliance with procedural rules"); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"). This does not alter the standard for assessing a Rule 56 motion, but it does "reduc[e] the pool" from

which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II.     Factual Background

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Gosha as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

### A.     Mr. Gosha's Deposition Testimony

Mr. Gosha has been an inmate incarcerated at the Wabash Valley Correctional Facility ("WVCF") since November 2015. Dkt. No. 28-3 at 9. Mr. Gosha testified that he sued Dr. Chavez because she refused to order surgery for him even though he repeatedly complained about his hernia, the blood in his urine, and his swollen testicles. *Id.* at 19-20. He admits that he has not seen Dr. Chavez since April 2017. *Id.* at 20. Mr. Gosha further testified that he is suing Nurse Robinson because he was told by John Littlejohn, the assistant superintendent, that Nurse Robinson was in a position of authority and because Mr. Gosha had written her about his problems. *Id.* at 24-26. Mr. Gosha admits that he never saw Nurse Robinson. *Id.* at 24.

Mr. Gosha testified that he has been having problems with constipation and blood in his stool since 2016. *Id.* at 29-30. He further testified that when he first saw Dr. Chavez, she prescribed him a fiber pill that made the constipation better and helped him "flow." *Id.* at 32. He testified that at a second visit with Dr. Chavez, she ordered more medication for him, but that he did not take it consistently because he was concerned about the instructions on the medication regarding not to take the pills with other medications. *Id.* at 34. At a later visit with Dr. Chavez,

3

Dr. Chavez diagnosed him with hernia and suggested that he get surgery. *Id.* at 34-36. Mr. Gosha testified that he was later provided a hernia belt by Dr. Byrd, but that the hernia belt was uncomfortable. *Id.* at 38. Mr. Gosha further admits that he has not complained to medical staff of any pain or problem with his hernia since at least September 2017 because he had decided that he would have the hernia addressed after he was released from prison. *Id.* at 41-42.

B. **The Defendants**

Dr. Chavez is a physician licensed to practice medicine in the State of Indiana. Dkt. No. 28-1 at 1. During the majority of 2016 and in 2017 until May 10, 2017, Dr. Chavez was employed as a physician at WVCF. *Id.* On May 10, 2017, she voluntarily left her position at the facility to obtain employment elsewhere. Dr. Chavez is no longer practicing medicine at the WVCF, or in the State of Indiana. *Id.*

Nurse Robinson is a nurse licensed to practice in the State of Indiana. Dkt. No. 28-2 at 1. During all times relevant to Mr. Gosha's Complaint, Nurse Robinson was employed as the Director of Nursing at WVCF. Prior to April 1, 2017 she held this position as an employee of Corizon, LLC. From April 1, 2017, up until September 2018, Nurse Robinson held this position as an employee of Wexford of Indiana, LLC. *Id.* Nurse Robinson recently voluntarily resigned her position as the Director of Nursing at WVCF and currently holds other employment as a nurse in the State of Indiana. *Id.* As part of Nurse Robinson's role as the Director of Nursing at Wabash Valley Correctional Facility, she would often oversee the nursing staff at the facility and respond to letters and grievances that were forwarded to the health care unit by inmates at the facility. *Id.*

C. **Medical Records**

On November 21, 2016, Dr. Chavez saw Mr. Gosha for an evaluation regarding a family history of diabetes, a complaint of numbness and tingling of the feet and hands, and a report from

Mr. Gosha that he felt tired a lot. The record contains no complaints of Mr. Gosha suffering from testicular pain, abdominal pain, or any other symptom that would be consistent with a hernia. Dkt. No. 28-1 at 1-2; Dkt. No. 28-4 at 1-3.

On December 13, 2016, Mr. Gosha submitted a request for healthcare because he thought he had testicular cancer. Dkt. No. 28-4 at 5. He was seen by Nurse Lacey Wade on December 16, 2016, where he explained that he had a family history of cancer and was concerned about finding "several" lumps during testicular self-examinations in the last couple of months. *Id.* at 7-8.

On January 23, 2017, Mr. Gosha submitted another request for healthcare, explaining that he had "pain in my private part." *Id.* at 9. He was seen by Nurse Lockhart on January 25, 2017. On January 30, 2017, Dr. Chavez saw Mr. Gosha regarding his complaint of constipation and urination. Dkt. No. 28-4 at 12-14; Dkt. No. 28-1 at 2. Mr. Gosha reported bowel movements once weekly and that these symptoms had been persistent for about three months. With regard to his urination, he also reported that the symptoms had been present for three months, with difficulty starting a stream. Dr. Chavez's plan was to prescribe Colace for one month, as well as encourage Mr. Gosha to increase his water intake. Dr. Chavez also ordered testing, including a urinalysis, urine culture and STD testing to determine the potential cause of the difficulty urinating and scheduled Mr. Gosha for a follow-up.

On February 16, 2017, Mr. Gosha submitted another request for healthcare, explaining that was still experiencing pain and the pill (Colace) was not helping. Dkt. No. 28-4 at 16. He was seen by Nurse Anne Conner on February 18, 2017, but she did not feel comfortable performing a testicular exam and referred him to the doctor. *Id.* at 17-19. On February 27, 2017, he refused to be seen by the doctor. *Id.* at 20.

On March 9, 2017, Mr. Gosha was seen during nurse sick call and asked to be checked for colon cancer because he was still using the restroom a lot. *Id.* at 21-23. He also complained of pain on his left side. He was referred for an evaluation.

Dr. Chavez followed-up with Mr. Gosha on March 13, 2017, in which he was again complaining of constipation and frequent urination. Dkt. No. 28-4 at 24-25; Dkt. No. 28-1 at 2-3. He specifically mentioned rectal bleeding and passing stool that was "like rocks." He also complained of pain in his left lower abdomen. It was also his belief that he was seeing blood in his urine. Dr. Chavez's concern at this visit was that Mr. Gosha's symptoms were consistent with a potential urinary tract infection. Dr. Chavez prescribed Bactrim for 10-days, which is an antibiotic, and also prescribed Tamsulosin 0.4 mg for a potentially enlarged prostate, which she believed may have been the cause of the difficulty to maintain a stream while urinating. Finally, given that he still had constipation after the prescription of Colace, she prescribed Psyllium Husk capsules with 8 ounces of water, in an attempt to address the constipation. Dkt. No. 28-1 at 2-3.

In late March, Mr. Gosha submitted another request for healthcare, requesting a MRI scan of his testicle and asserting that the medications had not been helping him thus far. Dkt. No. 28-4 at 26. Nurse Trout saw him on March 29, 2017, and wrote that Mr. Gosha believes he has a hernia, but has no explanation for what would have caused his pain or injury. *Id.* at 27-29. Nurse Trout referred him to see a doctor.

On April 8, 2017, Mr. Gosha submitted another request for healthcare, explaining that he thought he had a hernia. *Id.* at 30. Nurse Conner saw him on April 10, 2017, but did not examine his testicles. *Id.* at 31-33. Instead, she referred him to see a doctor.

On April 24, 2017, Dr. Chavez saw Mr. Gosha for a provider visit. *Id.* at 34-35; Dkt. No. 28-1 at 3. During that visit, Mr. Gosha explained that he was feeling a "bulging" in the groin area

that was larger on the left side. He stated that the bulging gets worse when he is having bowel movements, but that it goes away when he lies on his back. Dr. Chavez noted that the testicles were normal with symmetry, but a right cough test was positive for a small inguinal hernia. A left cough test was positive for a moderately large inguinal hernia. At that time, Mr. Gosha still had active prescriptions for Psyllium Husk and Tamsulosin through June 10, 2017. Given his complaints of discomfort, Dr. Chavez completed a request for Mr. Gosha to be seen by a surgeon for evaluation and treatment of bilateral inguinal hernias.

According to Dr. Chavez's records, this was her last visit with Mr. Gosha, as she left the facility less than three weeks later on May 10, 2017. Dkt. No. 28-1 at 3. Following this visit with Mr. Gosha, his medical care was overseen by Dr. Samuel Byrd, who is also a physician at the WVCF. *Id.*

Nurse Robinson does not believe she had any face-to-face interaction with Mr. Gosha nor does she recall receiving any letters directed to her by Mr. Gosha. Dkt. No. 28-2 at 2. Based upon her review of the records, it does appear that she responded to some grievances that Mr. Gosha had filed, which were forwarded by the grievance office to the health care unit for response. *Id.* She did not officially deny or grant these grievances, but would provide an official response. Instead, Nurse Robinson would review the grievances, check the inmate's medical chart, and if needed, converse with the Health Services Administrator or physician on-site for clarification.

On May 6, 2017, Nurse Robinson responded to a grievance that had been filed by Mr. Gosha on April 26, 2017, in which he was discussing medical attention for a hemorrhoid and discomfort in his left testicle. Dkt. No. 28-2 at 2-3; Dkt. No. 28-5 at 16. She noted that Mr. Gosha had seen the physician on-site on May 2, 2017, and was diagnosed with an inguinal hernia, and not hemorrhoids. Nurse Robinson noted that a request for a hernia belt had been submitted and

7

was approved. Finally, she checked the records and noted that not only had the hernia belt been approved, but that an order had already been made for the belt to be brought to the facility and dispensed to Mr. Gosha. Nurse Robinson informed Mr. Gosha that it might take up to three or four weeks for this belt to arrive at the facility.

On July 19, 2017, Nurse Robinson reviewed and responded to a grievance that had been filed by Mr. Gosha on July 17, 2017. Dkt. No. 28-2 at 3; Dkt. No. 28-5 at 23. She noted that Mr. Gosha was indicating that he needed to see a surgeon and was receiving a pill called Cipro. Nurse Robinson informed Mr. Gosha that he had already been seen by the physician a few days prior for low back pain and scrotal pain and that Cipro was an antibiotic that had been prescribed by the doctor during that visit. She also advised Mr. Gosha to follow instructions that had been given to him by the physician.

To the best of Nurse Robinson's knowledge and based up a review of the documents provided to her, these grievances were the only involvement she had as it relates to Mr. Gosha's medical care at issue in this case. Dkt. No. 28-2 at 3. Based upon Nurse Robinson's review of the relevant medical records, Mr. Gosha's hernia was evaluated by two separate physicians, Dr. Mary Ann Chavez and Dr. Samuel Byrd. *Id.* Mr. Gosha was provided medication for the hernia and a hernia belt. *Id.* Nurse Robinson did not have the authority to diagnose patients, order treatment, or schedule outside referrals or surgeries. *Id.* at 4.

### III. Discussion

The defendants move for summary judgment on Mr. Gosha's claims, asserting that they were not deliberately indifferent to Mr. Gosha's serious medical needs. Dkt. No. 27. Dr. Chavez asserts that the evidence shows that she took appropriate steps to treat his symptoms as presented and took appropriate steps once his hernia was diagnosed. *Id.* at 13-15. Nurse Robinson asserts

8

that she did not treat Mr. Gosha or have any face-to-face interactions. *Id.* at 15. Her only interactions with him were through her responses to his grievances, in which she relied on medical records to confirm that he had been seen by a physician and was receiving treatment. Mr. Gosha did not respond to defendants' motion for summary judgment, and the time to do so has passed.

At all times relevant to Mr. Gosha's claim, he was a convicted inmate. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). A successful § 1983 plaintiff must also establish not only that a state actor violated his constitutional rights, but that the violation caused the plaintiff injury or damages. *Roe v. Elyea*, 631 F.3d 843, 846 (7th Cir. 2011) (citation omitted).

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even

though he could have easily done so.'" *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). "Under the Eighth Amendment, [a plaintiff] is not entitled to demand specific care. [He] is not entitled to the best care possible. [He] is entitled to reasonable measures to meet a substantial risk of serious harm to [him]." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (internal citation omitted).

The defendants do not appear to dispute that Mr. Gosha's hernia, blood in urine, and swollen testicles constitute an objectively serious medical need. *See* Dkt. No. 27. Rather, they dispute Mr. Gosha's claim that Dr. Chavez and Nurse Robinson were deliberately indifferent.

**A.     Dr. Chavez**

Mr. Gosha asserts that Dr. Chavez was deliberately indifferent for failing to order surgery for his hernia. However, the undisputed record reflects that once Dr. Chavez diagnosed Mr. Gosha with a hernia on April 24, 2017, she requested that he been seen by an outside specialist, a surgeon,

for "evaluation and treatment of [Mr. Gosha's] bilateral inguinal hernias."[1] Dkt. No. 28-4 at 34-35. Shortly thereafter, on May 10, 2017, Dr. Chavez voluntarily left her position at WVCF, and care of Mr. Gosha was transferred to Dr. Byrd. Dkt. No. 28-1 at 2-3. Mr. Gosha was seen by another doctor on May 2, 2017. *See* Dkt. No. 28-5 at 4. Thus, Mr. Gosha fails to show Dr. Chavez was deliberately indifferent for failing to order surgery when she submitted a request for surgery, and care for Mr. Gosha had transferred to another doctor two weeks later.

To the extent Mr. Gosha is complaining about Dr. Chavez's care prior to the hernia diagnosis, the undisputed record reflects that Dr. Chavez timely saw Mr. Gosha on multiple occasions, ordered appropriate lab tests to diagnose the problem, and prescribed various medications she believed would provide relief to Mr. Gosha. Prison doctors who try reasonable, though imperfect, approaches to address an inmate's symptoms, and eventually resolve the symptoms, do not violate the Eighth Amendment by omitting a different, possibly better approach. *See Proctor v. Sood*, 863 F.3d 563, 567–68 (7th Cir. 2017) (affirming entry of summary judgment for prison's doctors who, despite failing to order colonoscopy or endoscopy to diagnose inmate's abdominal pain, reasonably investigated inmate's pain in other ways); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (reversing district court's refusal to enter judgment in favor of prison doctor where, despite a possibly superior alternative treatment, doctor's treatment of inmate was reasonable).

Accordingly, Dr. Chavez is entitled to summary judgment on Mr. Gosha's Eighth Amendment claim against her.

---

[1] There is no indication in the record as to what happened to Dr. Chavez's request for surgery consultation.

### B. Nurse Robinson

Mr. Gosha asserts that Nurse Robinson was deliberately indifferent for failing to help his pain and suffering from his hernia even though she was aware of his complaints. The undisputed record reflects that Nurse Robinson's interactions with Mr. Gosha were limited to responding to his grievance complaints. In reviewing his grievances, Nurse Robinson reviewed Mr. Gosha's medical records, confirmed that he had been recently seen by multiple doctors about his hernia, and treatment was ordered for Mr. Gosha. She confirmed that a hernia belt had been ordered, but noted that it would take a couple weeks for the belt to arrive. She also confirmed that Mr. Gosha had been prescribed antibiotics for his pain. Nurse Robinson, even with her training as a nurse, was entitled to rely on the doctors treating Mr. Gosha and their superior medical training. Having confirmed that he had been seen for his hernia recently and treatment was proceeding as ordered, Nurse Gosha could not be deliberately indifferent to Mr. Gosha's serious medical needs.

To the extent Mr. Gosha complains that Nurse Robinson did not follow-up on Dr. Chavez's request for surgery for him, care for Mr. Gosha had been transferred from Dr. Chavez to Dr. Byrd in May 2017. Dr. Byrd saw Mr. Gosha, and instead prescribed Mr. Gosha a hernia belt. There was no reason for Nurse Robinson to second-guess Dr. Byrd's decision to request a hernia belt instead of surgery. Indeed, "[u]nder the Eighth Amendment, [a plaintiff] is not entitled to demand specific care. [He] is not entitled to the best care possible. [He] is entitled to reasonable measures to meet a substantial risk of serious harm to [him]." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Boyce v. Moore*, 314 F.3d 884, 888-889 (7th Cir. 2002) (Inmates are entitled only to "adequate medical care.").

Accordingly, Nurse Gosha is entitled to summary judgment on Mr. Gosha's Eighth Amendment claim against her.

## IV. Conclusion

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases, summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Mr. Gosha has not identified a genuine issue of material fact as to his claims in this case and the defendants are entitled to judgment as a matter of law. Therefore, the defendants' motion for summary judgment, Dkt. No. 26, is **GRANTED.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 10/15/18

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution:

TODD GOSHA
167028
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Electronically Registered Counsel